**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JAMES DANIEL LEE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **LOWE'S HOME CENTERS, LLC** | § | |
| **and DAVID GARRISON, individually,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff James Daniel Lee, files this Original Complaint against Defendants Lowe's Home Centers, LLC, and David Garrison, individually, alleging wrongful discharge and retaliation in violation of the Family and Medical Leave Act (the "FMLA"), the Emergency Family and Medical Leave Expansion Act (the "EFMLEA"), and the Emergency Paid Sick Leave Act (the "EPSLA").

## I. PARTIES AND SERVICE

1. Plaintiff James Daniel Lee ("Plaintiff" or "Lee") is a resident of Harris County, Texas.

2. Defendant Lowe's Home Centers, LLC ("Lowe's") is a North Carolina limited liability company headquartered in Raleigh, North Carolina. Lowe's may be served via its registered agent for service of process, Corporation Service Company dba CSC – Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701–3218, or wherever it may be found.

3. Defendant David Garrison ("Garrison") is an individual residing in Harris County, Texas. He may be served at 1227 Pine Walk Trail, Spring, Texas 77388, or wherever he may be found.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this matter involves controversies arising under the laws of the United States, including the FMLA, EFMLEA, and EPSLA.

5. Venue is proper in the Southern District of Texas, under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions forming the basis of the suit occurred in this District.

6. All administrative prerequisites have been met or have expired.

## III. FACTUAL SUMMARY

7. On April 2, 2005, Lee began working for Lowe's. His most recent position with Lowe's was as a Department Manager at the Lowe's Home Improvement store located at 20201 IH 45 N., Spring, Texas 77388.

8. In 2016, Lee received a promotion to Installed Sales Manager at the Spring, Texas location.

9. At all times relevant, Defendants Lowe's and Garrison were each an "employer" of Lee as defined by Section 101(4)(A)(i)-(ii) of the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. § 2611(4)(A)(i), as adopted and amended by the EFMLEA via Section 3102(b) of the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020) (the "FFCRA"), and as defined by the EPSLA pursuant to Section 5110(2)(A) & (2)(B)(i) of the FFCRA.

10. At all times relevant, Garrison had the authority to fire and/or discipline Lee, and Garrison supervised and controlled the conditions of Lee's employment with Lowe's, including with respect to taking leave protected by the FMLA, EFMLEA, and EPSLA. Garrison acted directly and indirectly in the interest and on the behalf of Lowe's with respect to Lee's employment, and thus Garrison, individually, was also an "employer" with respect to Lee pursuant to the FMLA, EFMLEA, and EPSLA.

11. On or about March 14, 2020, Lee's son's school closed due to the COVID-19 pandemic and subsequent shelter-in-place orders. Lee's son, a minor, is autistic and requires special care and supervision.

12. On or about March 17, 2020, Lee submitted a request for emergency leave to take care of his son. Lowe's Human Resources ("HR") approved the request. Lee's parents were deemed unavailable to care for Lee's son due to the increased risk of COVID-19 exposure, as they are both over the age of 65 and have underlying health conditions identified by the U.S. Centers for Disease Controls and Prevention as being at increased risk of developing severe cases of COVID-19.[1] Indeed, Lee's parents fall squarely into the high-risk category defined by the Center for Disease Control guidelines on COVID-19.

13. The approval by HR granted Lee an FMLA work schedule which allowed Lee time to care for his son. Immediately following the issuance by HR of the approval of the leave request, Garrison, Lee's immediate manager, expressed to Lee that Garrison was unhappy with Lee for seeking and being granted the leave.

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

14. Garrison instead obstructed Lee's use of protected leave by imposing a work a schedule different from Lee's approved FMLA schedule. The schedule imposed by Garrison would not allow Lee time to care for his son.

15. Lee informed Garrison of the special circumstances which mandated his leave request, and informed Garrison that his parents each have multiple underlying health conditions that place them at elevated risk of severe illness if they were to contract COVID-19, but Garrison repeated his opposition to the leave. Lee then proposed an alternative of working half-days, using intermittent leave for the rest of each day, and his PTO. Garrison informed Lee that was also unacceptable, and that he needed Lee to remain full-time.

16. Garrison's tone and insistence made it clear to Lee that failure to comply with Garrison's demand would likely result in Garrison taking actions negatively affecting Lee's future at Lowe's. Accordingly, Lee met with his elderly parents and they agreed to care for his son during Lee's regular work hours each day, despite the potential risk they faced from not isolating to protect themselves from being exposed to COVID-19.

17. Consequently, on March 18, 2020, Lee informed Garrison that he would work his normal, non FMLA-adjusted schedule, and would arrange for Lee's mother to care for Lee's son. Lee also filed a complaint against Garrison for interfering with Lee's approved FMLA leave.

18. On April 6, 2020, Garrison informed Lee that Lowe's was terminating Lee's employment for allegedly "creating a hostile work environment" due to a work-related disagreement Lee previously had with two fellow managers. Lee had no history of discipline, did not in fact create a hostile work environment, and was never given the opportunity to adequately respond to the allegation. The stated rationale for Lee's termination was pretextual.

19. The next day, April 7, 2020, Lee returned a call from HR representative Ms. Black [first name unknown], who stated that she was investigating Lee's complaint against Garrison concerning the FMLA leave. Lee informed Black that, just the day before, he had been unjustly fired by Garrison. Black expressed surprise and promised to investigate Lee's termination. Black further stated that Lee would be allowed to reapply to Lowe's for reinstatement/employment immediately, and Lowe's would not oppose any application by Lee for unemployment benefits. She also opined that action would be taken against Garrison.

20. Between April 2020 and July 2020, Lee applied to two other Lowe's stores but was not even offered an interview. A third store scheduled an interview but subsequently cancelled the interview without explanation.

21. In July 2020, Lee contacted Lowe's and sought an explanation for the repeated rejections and refusals to grant an interview.

22. On or about July 23, 2020, HR representative Polly [last name unknown] contacted Lee and stated that all she could do was send Lee his personnel file and contact a different department.

23. After several transfers and subsequent calls, Lee spoke with a different HR representative, Stacy [last name unknown], who stated that Lee would be eligible for re-hire, but only six months after his termination, in contradiction to what Black had told Lee. Stacy also stated that she would initiate an investigation into Lee's termination. She also scheduled an interview with Lee, which she later cancelled.

24. Approximately one week later, Stacy informed Lee by phone that she was closing Lee's complaints about both his termination and his futile attempts at re-employment.

25. Lee, to date, still has not been re-employed by Lowe's.

26. Defendants' stated reasons for terminating Lee's employment were mere pretext for terminating him in violation of the FMLA, the EFMLEA, and the EPSLA.

27. Specifically, Lowe's, through its manager, Garrison, interfered with Lee's rights under the FMLA, the EFMLEA, and the EPSLA by refusing to honor his request for protected leave.

28. Further, Lowe's, through its manager, Garrison, retaliated against Lee by terminating his employment after requesting protected leave and after he complained that Garrison refused to allow him the leave to which he was lawfully entitled.

29. Additionally, Lowe's further retaliated against Lee for his complaint about the unjust and unlawful nature of his termination, and the stated basis therefor, by rejecting uniformly and repeatedly his attempts to secure re-employment.

30. All conditions precedent have been performed or have occurred.

31. The actions of Defendants as set forth above were willful, intentional, and taken in bad faith.

## IV. CAUSES OF ACTION

### COUNT ONE: VIOLATION OF THE FMLA AGAINST DEFENDANT LOWE'S AND GARRISON

32. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

33. When Plaintiff worked for Defendant, he was an "eligible employee" as defined by the FMLA because Plaintiff was employed by Lowe's for over twelve months, he worked at least 1,250 hours over the twelve month period preceding his/her termination, and Lowe's employed fifty or more employees at or within seventy-five miles of its location in Spring, Texas, where Plaintiff worked and from which Plaintiff's work was assigned and to which he reported.

34. Defendants' actions as set forth above were pretextual and were taken in order to interfere with, restrain, and/or deny the exercise or the attempt to exercise Plaintiff's rights under the FMLA, and/or to retaliate against Plaintiff for exercising, and attempting to exercise, his rights under the FMLA.

35. As a direct and proximate consequence of Defendants' violations of the FMLA, Plaintiff has suffered damages, which include lost wages, salary, employment benefits, and other compensation.

**COUNT TWO: VIOLATION OF THE EMERGENCY FAMILY AND MEDICAL LEAVE EXPANSION ACT BY LOWE'S AND DEFENDANT GARRISON**

36. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

37. When Plaintiff worked for Lowe's, he was an "eligible employee" as defined by the EFMLEA because Plaintiff was employed by Lowe's for over 30 calendar days as of April 2, 2020.

38. On March 17, 2020 Plaintiff informed Defendants that Plaintiff's son's school closed, and that childcare was necessary because Plaintiff's son suffers from autism.

39. Plaintiff therefore had a qualifying need related to a public health emergency with respect to leave under the EFMLEA, and was entitled to leave protected by Sections 102(a)(1)(F) of the FMLA, 29 U.S.C. § 2612(a)(1)(F), as adopted by the EFMLEA pursuant to Section 3102(a)(1) of the FFCRA.

40. Three weeks after Plaintiff informed Defendant that Plaintiff needed leave to care for his son, and that Garrison had pressured Plaintiff to not exercise his right to leave, Defendants terminated Plaintiff on a pretextual basis.

41. Defendants' actions in opposing leave and terminating Plaintiff's employment were taken in order to retaliate against, interfere with, restrain, and/or deny the exercise or the attempt to exercise Plaintiff's rights under the EFMLEA.

42. As a direct and proximate consequence of Defendants' violations, Plaintiff has suffered damages.

43. Plaintiff's damages include lost wages, salary, employment benefits, and other compensation.

44. Plaintiff seeks damages, liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), pre- and post-judgment interest, such equitable relief as may be appropriate, attorneys' fees, expert witness fees, if any, and costs of court.

**COUNT THREE: VIOLATION OF THE EMERGENCY PAID SICK LEAVE ACT AGAINST DEFENDANTS LOWE'S AND GARRISON**

45. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

46. At all times relevant, Lowe's was an "employer" of Plaintiff as defined by the EPSLA pursuant to Section 5110(2)(A) & (2)(B)(i) of the FFCRA.

47. At all times relevant, Garrison was an "employer" of Plaintiff as defined by the EPSLA pursuant to Section 5110(2)(A) & (2)(B)(i) of the FFCRA.

48. When Plaintiff worked for Lowe's, he was an "employee" as defined by the EPSLA pursuant to Section 5110(1)(A)(i) of the FFCRA.

49. Plaintiff was entitled to and was approved to take leave under the EPSLA pursuant to Section 5102(a)(5) of the FFCRA.

50. Immediately after Plaintiff received permission to take leave under the EPSLA as a result of the closure of his son's school, Defendant Garrison impermissibly interfered with

Plaintiff's approved leave under the EPSLA by fervently expressing his opposition to Plaintiff working his approved adjusted work schedule.

51. Approximately two weeks after Plaintiff requested leave under the EPSLA, Defendants terminated Plaintiff.

52. Defendant Garrison violated the EPSLA by refusing to allow Plaintiff to work his approved adjusted work schedule.

53. Defendants violated the EPSLA by discharging Plaintiff for requesting leave in accordance with the EPSLA and for complaining that he had been refused his rights under EPSLA.

54. As a direct and proximate consequence of Defendants' violation, Plaintiff has suffered damages.

55. Plaintiff's damages include lost wages, salary, employment benefits, and other compensation.

56. Pursuant to Section 5105(b) of the FFCRA, by the incorporation therein of the enforcement mechanisms and remedies provided by Sections 15(a)(3) and 16 of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 215(a)(3) & 216, Plaintiff seeks damages, liquidated damages pursuant to 29 U.S.C. § 216(b), pre- and post-judgment interest, such equitable relief as may be appropriate, attorneys' fees, and costs of court.

## V. JURY DEMAND

57. Plaintiff requests a jury trial and has tendered the appropriate fee.

## VI. PRAYER

WHEREFORE, premises considered, Plaintiff respectfully requests that the Court:

A. Issue summons for Defendants to appear and answer;

B. Award to Plaintiff a judgment against Defendants, jointly and severally, for:

1. Actual damages;
2. Past and future lost wages, benefits, and other compensation;
3. Compensatory, liquidated, and exemplary damages in the maximum amount permitted by law;
4. Such equitable relief as may be appropriate;
5. Pre- and post-judgment interest;
6. Attorneys' fees;
7. Expert witness fees and other litigation expenses;
8. Costs.

Plaintiff further requests such other relief to which he is entitled in law or in equity.

Respectfully Submitted,

*/s/ Jennifer J. Spencer*

Jennifer J. Spencer
Texas Bar No. 10474900
Southern Dist. of Texas ID: 16372
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
Southern Dist. of Texas ID: 2848803
jhunnicutt@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF JAMES DANIEL LEE**